## QUINN v. JOHNSTON.

### No. 3353.

Court of Civil Appeals of Texas. Beaumont.

Nov. 15, 1938.

Rehearing Denied Nov. 23, 1938.

Kemper, Hicks & Cramer, of Houston, for appellant.

C. A. Teagle and Sam G. Croom, both of Houston, for appellee.

O'QUINN, Justice.

Appellee, Johnston, brought this suit in the district court of Harris County against appellant, Quinn, for damages for the breach of an alleged written contract of date June 10, 1937, in which appellant had agreed to sell to him, appellee, a 1/64 royalty of all the oil, gas and other minerals in, on and under 2,394.36 acres of land, being sections 34, 36, 38, and 40, H. & T. C. Ry. Co. surveys, in Newton County, Texas. Damages were prayed in the sum of $10,-475.15, with legal interest from June 26, 1937.

Appellant duly filed his plea of privilege to be sued in the county of his residence, alleged to be Jefferson County, Texas. Appellee filed his controverting affidavit referring to and making a part of his controverting affidavit, his petition and also replead fully the grounds upon which he based his right to recover, and to confer venue in Harris County, under section 5 of Article 1995, R.S.1925, Vernon's Ann. Civ.St. art. 1995, subd. 5, an alleged contract in writing to be performed in Harris County. Upon hearing the plea of privilege was overruled, and this appeal is from that order.

The evidence on the hearing of the plea of privilege and the controverting affidavit, was in the main documentary, it being contended by appellee that the instruments offerred and received in evidence constituted a contract in writing to be performed in Harris County, and the appellant contending that no such contract was shown.

To copy in full the different instruments would serve no useful purpose, and would render this opinion inexcusably long. We shall state the substance of the instruments, quoting only those parts deemed necessary to a proper understanding of the question involved.

On June 10, 1937, appellant, Quinn, was the owner of some 2,394.36 acres of land, being Sections 34, 36, 38 and 40, H. & T. C. Ry. Co. Surveys in Newton County, Texas. At that date, while he was the accepted purchaser of the land from the State, no patent had been issued, but was expected soon to be. He had leased the land to the Gulf Production Company for oil purposes, and retained for himself a 1/8 royalty of all the oil, gas and other minerals in and under said land. On said date he entered into a written contract with appellee to sell him an undivided 1/8 of his retained 1/8 royalty in the oil, gas and other minerals in and under

said land for a consideration of $11,971.80, under the following conditions: "This escrow agreement together with royalty deed and draft for $11,971.80 shall be placed in the First National Bank at Beaumont in escrow with instructions to said bank to send same to the National Bank of Commerce at Houston, Texas, for inspection by Floyd A. Johnston or his attorneys; it being understood and agreed that the draft will be paid when presented or within twenty-four (24) hours after same is presented and that said National Bank of Commerce at Houston, Texas, may hold said money and papers subject to the examination of title."

It was then stipulated that the grantor, Quinn, would in ten days from June 10, 1937, deliver to James E. Whiteside, agent for Johnston, a complete abstract of title to the land, or, in case of failure to deliver the abstract of title to said agent, to send same to said National Bank of Commerce for delivery to Johnston. That Johnston should have five days to examine the abstracts after delivery; that grantee had the right to furnish grantor copy of written opinion pointing out any defects in the title, and in such event the grantor should have 30 days in which to attempt to cure the defects, but this was at grantor's option; that grantee (Johnston) had the right to waive any such defects, accept the title and instruct the bank to deliver the deed to him, and the purchase money to the grantor; that grantee might at any time during the investigation of the title accept same and close the deal.

It was further stipulated that it was understood that the land in question was unpatented State land, but would be patented at an early date, grantor having been awarded the sale of same from the State.

The contract closed with this stipulation: "It is understood and agreed that should grantee accept the title and this transaction is actually closed the Grantor hereby agrees to sell the Grantee or his assigns an additional one sixty-fourth (1/64) royalty one-eighth (1/8) of the one-eighth (1/8) royalty in the above described land for an additional consideration of a like amount which is on a Forty ($40.00) Dollar per acre base; said Grantee is to have until the 25th day of June, A. D. 1937, to exercise his option and pay the considerations for the additional royalty."

This is the basis for the suit, and together with communications relative to same, controls the action.

The record discloses that on or about July 16, 1937, patents to the land were issued and properly recorded. The original contract for 1/64 royalty was then closed and the deed delivered and the consideration of $11,971.80 paid.

On June 24, 1937, appellee, Johnston, called Quinn over the phone and told him that he would exercise the option and take the additional sixty-fourth royalty to which Quinn replied "that is right, you have until the 25th." On the evening of the 24th of June, Johnston sent Quinn the following telegram:

"Houston, Texas, June 24, 1937.
"Mr. B. E. Quinn,
"Wiess Building,
"Beaumont, Texas.

"Pursuant to terms of escrow agreement dated June tenth nineteen thirty seven I hereby exercise option to purchase an additional one sixty fourth royalty interest in Sections thirty four thirty six thirty eight and forty H. & T. C. RR Survey Newton County Texas Stop Mailing royalty deed to be executed and returned to National Bank of Commerce Houston Texas to be escrowed with consideration Stop Said consideration to be paid to you upon delivery of the royalty deed and the issuance of patents and filing same for record.

"Floyd A. Johnston."

The same afternoon (June 24, 1937) Johnston, by registered mail, sent letter enclosing copy of telegram to Quinn. It reads:

"623 Chronicle Building
"Houston, Texas,
"June 24, 1937.
"Mr. B. E. Quinn,
"Weiss Building,
"Beaumont, Texas.
"National Bank of Commerce,
"Houston, Texas.

"Dear Sirs:

"Herewith copy of day letter sent you exercising the option to purchase the additional 1/64th royalty as stated.

"There is also enclosed royalty deed in duplicate—the original of which should be executed and duly acknowledged and forwarded to the National Bank of Commerce, Houston, Texas, to be escrowed with the consideration of $11,971.80, with the condition that said consideration be paid to you upon delivery of royalty deed and issuing of patents and filing same for record, covering the said four sections of land.

"For convenience, this letter is tendered in duplicate originals so that you may signify your approval to the escrow agent on one copy, retaining the other for your file.

"It is assumed that you will probably pass the deed and approved copy of this letter through your bank in Beaumont to the National Bank of Commerce, Houston, Texas, with instructions to notify the writer at telephone Preston 4775 upon the arrival of the instruments.

"Very truly yours,
"Floyd A. Johnston."
"Approved for escrow as above.
"(Not signed)

----

"B. E. Quinn
"(Written in Ink: Received copy of this letter 6–25–37 Chas. W. Hamilton")
"FAJ:HO
"enc.

"Done in Triplicate originals."

This letter was duly received by Quinn, and he signed return registry receipt.

As a result of the telegram and letter sent Quinn by Johnston, Quinn wrote a letter to the First National Bank at Beaumont, sending Johnston a copy. It reads:

"Beaumont, Texas,
"June 25, 1937.
"First National Bank,
"Beaumont, Texas.
"Gentlemen:

"I am handing you herewith royalty deed executed by me to Floyd A. Johnston for a 1-64th royalty in four sections of land in Newton County, Texas, and you are instructed to send this deed to the National Bank of Commerce, Houston, Texas, with instructions to deliver it to Floyd A. Johnston provided that he has paid in to the bank to my account the sum of $11,971.-80 on or before the 25th day of June, 1937.

"I sold to Mr. Floyd A. Johnson an equal amount on or about the 10th day of June, 1937, and turned over to your bank an escrow agreement together with a draft and deed which you were to send to the National Bank of Commerce. The draft attached to the deed and escrow agreement of June 10 I understand has been paid in to the National Bank of Commerce to be delivered to me as soon as the State issues the patents to the land, and I understand the patents will be issued today or tomorrow.

"The escrow agreement above referred to provided that should this said Floyd A. Johnston complete the first deal and pay off the draft, that I was to give him an option and did give him an option in the escrow agreement for an additional 1-64th royalty at the same price of the first 1-64th with the understanding that the additional consideration could be paid to the bank for my account Not Later Than June 25. In other words, if for any reason the first sum of $11,971.80 has not been paid and if for any reason the additional sum of $11,971.80 is not paid before the end of June 25, the deed which I'm attaching herewith is to be returned to me, and the bank is instructed not to accept any money after June 25.

"My reasons for giving these instructions are that the option in the escrow agreement is very plain that it ended on June 25 unless the money was paid in to the bank after the other deal had been completed. Due to the fact that this royalty can be sold for more money today than it could have been sold for, I do not want to accept the money and will not accept it unless they comply with the agreement by paying the money on the second deal after the first is closed and not later than the 25th day of June.

"You are therefore instructed to return this deed to me unless the bank receives the additional $11,971.80 either on June 25 or prior to that date.

"Yours truly,
"B. E. Quinn
"Box 1503,
"Beaumont, Texas."
"BEQ/b
"cc to National Bank of Commerce,
"Houston, Texas."

The record reflects that the above quoted letter was received by the National Bank of Commerce, Houston, on June 26, at 10:15 A. M. Also that the deed from Quinn to Johnston conveying the additional 1/64th royalty above referred to was received by said bank on June 26th at 10:15 A. M. Also that Johnston deposited with the said National Bank of Commerce the sum of $11,-971.80 on said June 26th at 11:30 A. M.

By reason of Quinn's letter above set out, and a telegram from the First National Bank, acting under the Quinn letter to it, the deed was not delivered to Johnston, nor the money paid to Quinn, but the deed was returned to Quinn, and the money to Johnston. This for the reason that the title was not accepted and the consideration paid before the close of June 25th, 1937.

Appellee offered in evidence his controverting affidavit which referred to his pe-

tition. It was received in evidence over the objection and exception of appellant.

As before stated, the plea of privilege was overruled, and this appeal is from that order.

The contract for the sale of the first 1/64th royalty did not require that the title to the land be accepted and the consideration therefor be paid on or before June 25, 1937, but left it at the option of appellee, Johnston, to do so. The last clause of the contract, set out above, provided that appellant would sell an additional 1/64th royalty to appellee if he, appellee, Johnston, accepted the title and actually closed the deal by the 25th day of June, 1937, and paid the consideration for the additional 1/64th royalty. It specifically said: "Grantee is to have until the 25th day of June, A. D. 1937, to exercise his option and pay the consideration for the additional royalty."

In his telegram to Quinn on June 24th, Johnston said he then exercised his option to purchase the additional 1/64th royalty and that he was mailing deed to Quinn conveying said royalty to appellee, said deed to be executed by Quinn and mailed to the National Bank of Commerce to be escrowed with the consideration to be paid for the royalty, said deed to be delivered to appellee, and the consideration to be paid to appellant, Quinn, "upon the delivery of the royalty deed and the issuance of patents and filing same for record". In his letter of same date to Quinn confirming the telegram, Johnston repeated his exercising of his option to purchase the additional royalty "with the condition that said consideration be paid to you upon delivery of royalty deed and issuing of patents and filing same for record, covering the said four sections of land".

■■ We think it plainly appears that appellee, Johnston, did not exercise the option to purchase the additional 1/64th royalty in accordance with the terms of the option. He conditioned his acceptance upon the delivery of the deed, and the issuance of patents to the land and the filing of same for record which he knew had not been issued. He ignored the proviso in the option that the option must be exercised and the deal actually closed and the consideration for the second 1/64th royalty paid on or before June 25, 1937. His acceptance of the offer to sell must have been in consonance with the full terms of the offer. It is too well settled to require the citation of authorities that for an acceptance of an offer to sell to be enforcible it must be unconditional and in absolute agreement with the very terms of the offer. Here Quinn offers to sell Johnston an additional 1/64th oil and gas royalty in certain lands if Johnston will accept the title to the lands, and pay the consideration on or before the 25th day of June, 1937. On June 24, 1937, Johnston notifies Quinn he is exercising his option to purchase the additional 1/64th royalty Conditioned that patents to the land have been issued by the State, and filed of record. No such condition was in the offer to sell and an acceptance thereto, but coupled with such condition, does not constitute an enforcible contract.

But it is insisted that the contract by which appellee bought the first 1/64th royalty, and in which contract the option to buy an additional 1/64th royalty was given appellee, did not require appellee to accept the title to the land and pay the consideration on or before June 25th, and that said contract provided that appellant was to furnish an abstract of title to the land and appellee should have five days in which to examine same before closing the deal, and also that it was understood that the patent from the State to the land had not issued but would in a few days, and that the consideration for the royalty was not to be paid until the patents issued and were filed for record, and these conditions also attached to the option to buy the second 1/64th royalty, and therefore his exercise of the option with the conditions named in his notice to appellant was in accordance with the terms of the option. This contention is not sound. The contract set out supra for the purchase of the first 1/64th royalty did have the provisions and conditions contended by appellee, but it also gave him the right to waive these conditions and at any time during the investigation of the title accept same and close the deal. Immediately following this provision, came the option for the purchase of the additional royalty. It reads: "It is understood and agreed that should grantee accept the title and this transaction (purchase of the first 1/64th royalty) is actually closed the grantor hereby agrees to sell the grantee or his assigns an additional one sixty-fourth (1/64) royalty one-eighth (1/8) of the one-eighth (1/8) royalty in the above described land for an additional consideration of a like amount which is on a Forty ($40.00) Dollar per acre basis; said grantee is to have until the 25th day of June, A. D. 1937, to exercise his option and pay the consideration for the additional roy-

alty". It is apparent that the purpose of grantor in the option was to hasten the acceptance by appellee of the title and the payment of the consideration by prescribinng that the right to purchase the additional royalty should depend upon the closing of the deal for the first 1/64th royalty and paying the consideration for the additional 1/64th royalty on or before June 25, 1937. All the evidence points to this conclusion. Appellee's acceptance and exercise of the option was not in accordance with the offer to sell the additional royalty, but varied its terms by attaching different conditions to same.

Appellee's petition plead all the instruments, and same were repeated in his controverting affidavit, and given in evidence. Failing to plead a cause of action against appellant, the court erred in overruling appellant's plea of privilege. The judgment is accordingly reversed and remanded with instructions that same be sustained and the cause transferred to the district court of Jefferson County, Texas. It is so ordered.